```
                IN THE UNITED STATES DISTRICT COURT FOR THE
                        EASTERN DISTRICT OF OKLAHOMA

DAVID M. FLEMING,                  )
                                   )
             Plaintiff,            )
                                   )
v.                                 )   Case No. CIV-06-507-KEW
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social             )
Security Administration,           )
                                   )
             Defendant.            )
```

## OPINION AND ORDER

Plaintiff David M. Fleming (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence"

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on January 4, 1963 and was 43 years old at the time of the ALJ's decision. He completed his high school education, attending special education classes. Claimant has previously worked as a cart pusher. Claimant alleges an inability to work beginning in December 1, 2003, due to impaired vision, hearing loss, borderline intellectual functioning, asthma, hyperactive airway disease, hypertension, a sleep impairment, lower back and hip pain, left knee pain, and edema of the lower extremities.

**Procedural History**

On June 3, 2004, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income under Title XVI of the Social Security Act (42 U.S.C. § 1381, *et seq.*). Claimant's application for benefits was denied initially and upon reconsideration. On December 19, 2005, Claimant appeared at a hearing before ALJ Larry M. Weber. By decision dated May 26, 2006, the ALJ found Claimant was not disabled at any time through the date of the decision. On September 25, 2006, the Appeals Council denied Claimant's request for review. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the residual functional capacity (RFC") to perform his past relevant work of cart pusher.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error requiring reversal in (1) failing to engage in a proper credibility analysis; (2) failing to conduct a proper RFC determination by failing to discuss significantly probative evidence which conflicted with his findings;

4

and (3) failing to properly evaluate Claimant's mental impairments.

### Evaluation of Claimant's Credibility

Claimant contends the ALJ failed to engage in an appropriate evaluation of Claimant's credibility. Claimant suffered from vision and hearing problems since birth. (Tr. 178-182). He has exotropia in his left eye, being able to only perceive light. His vision in his right eye is measured at 20/80 without correction and 20/30 with correction. (Tr. 183).

Claimant has a history of bilateral sensorineural hearing loss. He wears a hearing aid in his right ear. He states he hears nothing through his left ear. (Tr. 236).

Claimant underwent a psychological evaluation in February of 1990 in connection with vocational rehabilitation. He was evaluated by Monica Reed, a psychological assistant with Vocational Rehabilitative Services. She found Claimant to have a Special Development Disorder. Claimant's reading skills were estimated at a seventh grade level and his spelling and arithmetic skills were noted at a fourth grade level. (Tr. 149). Ms. Reed also administered the Wechsler Adult Intelligence Scale, Revised and found Claimant to have a verbal IQ of 75, a performance IQ of 94, and a full scale IQ of 81 +/- 6, which she estimated placed him in the low average to borderline range of intelligence. His non-verbal skills were superior to verbal conceptual ability. A significant

5

weakness was noted in subtests requiring concentration and generalizations from one situation to another. (Tr. 150). In conclusion, Ms. Reed found

> David was very cooperative during testing, really a pleasant young man. He gives impression that he is a hard worker and anxious to get some kind of job. His abilities are somewhat limited as far as verbal skills, however, employment which was geared more to hands-on type work would probably work out well for him.

(Tr. 152).

Claimant was again evaluated in July of 1993 by Jack G. Cazzelle, Ed.D. Dr. Cazzelle also tested Claimant employing the Wechsler Adult Intelligence Scale, Revised and found his verbal IQ to be 75, performance IQ to be 88 and full scale IQ to be 78 +/- 6. His reading skills were at a 7th grade level, his spelling at a 3rd grade level, and his arithmetic skills were at a 4th grade level. (Tr. 154). Dr. Cazzelle's stated in his recommendations that

> David seems to have some difficulty holding a job. His job history consists of dishwashing jobs. He should be able to improve his vocational opportunities if given on-job training and while working with a job coach. He should benefit from training in job behavior and relationships.

(Tr. 155).

Claimant also sought treatment for hypertension, recurring kidney stones, and asthma throughout the relevant period. While these conditions continued at least through January of 2002, the medical records do not indicate Claimant's condition worsened. Rather, Claimant's hypertension manifested in blood pressure

elevation was treated with a variety of medication with some degree of success.

In June of 2002, Claimant underwent hearing tests which revealed a 96 percent speech discrimination in his right ear and 36 percent in his left ear. (Tr. 227, 229-230). His hearing aid was checked. Later, in April of 2003, the same testing revealed a decrease in speech discrimination in his right ear to 80 percent but an increase in his left ear to 56 percent. (Tr. 220).

In a July 2002, Claimant was evaluated and found to be "feeling good." He had walked to the clinic. His blood pressure, however, was elevated. (Tr. 225).

Claimant underwent a consultative examination by Dr. Deepak Jaiswal. Although Claimant states his attorney objected to the report stemming from this examination as "fraudulent," apparently because Dr. Jaiswal did not actually perform the testing noted in the report, this matter was not explored in the ALJ's opinion. Since the matter is factual in nature, this Court cannot engage in a *de novo* review of the reliability of the report, especially in light of insufficient evidence existing in the record for any such determination.

Dr. Jaiswal found Claimant suffered from hypertension, blindness in the left eye, and ear problems. (Tr. 178). He found Claimant had difficulty hearing in the office which necessitated Dr. Jaiswal to speak loudly to him. Dr. Jaiswal found Claimant was not

able to follow regular verbal commands because of hearing difficulties. His final assessment included diagnoses for bilateral impairment hearing clinically, needing further evaluation with an audiogram, left eye blindness, and right knee stiffness. (Tr. 179).

In December of 2003, Claimant's medical records were evaluated by non-examining agency physicians. Claimant's visual and auditory limitations were noted. Environmental limitations were noted for Claimant to avoid unprotected loud noise exposure. (Tr. 189). Marked limitations were noted in Claimant's ability to understand and remember detailed instructions and ability to carry out detailed instructions. (Tr. 193). The functional capacity assessment was set forth as follows:

> [Claimant] has the ability to receive, understand, and carry out simple instructions. He has the ability to interact appropriately with coworkers and supervisors for work functions. He can adapt to changes in the workplace.

(Tr. 195).

On the Psychiatric Review Technique form completed by Dr. Sally Varghese, Claimant was found to have mental retardation. (Tr. 196). The noted disorder was "[l]ow average to borderline intellectual functioning." (Tr. 200). Claimant was found to have mild limitations in activities of daily living and difficulties in maintaining social functioning with marked limitation in difficulties maintaining concentration, persistence, or pace. No other limitations were found or noted. (Tr. 206).

8

At the administrative hearing, Claimant's hearing difficulties were evident. Claimant testified he had to look straight at someone's face to be able to understand what they are saying. With his hearing aid, however, Claimant can hear better. (Tr. 626). Claimant testified he worked part time for Burger King for over a year at the time of the hearing. He denied the ability to work full time because of his back. (Tr. 627). Claimant stated he had heart trouble in 2000 or 2001. He also testified he could only see color and movement in his left eye and could see out of his right eye with glasses. (Tr. 628). Claimant denied that this condition interfered with his work at Burger King. (Tr. 629).

Claimant testified he was unable to wear his hearing aid at work because the machines make too much noise. He stated his job duties at Burger King consisted of broiling burgers, toasting buns, and cleaning the floors. Id.

Claimant testified pain in his hip and leg causes him to have to sit every three to four hours. After he sits for two to five minutes, he is able to stand again. (Tr. 631).

Claimant cleans his apartment, cooks in the microwave and rides a bicycle to and from work. (Tr. 632). He visits his parents but has little interaction with co-workers outside of work.

Claimant stated he "mostly" gets along with other people. He gets along with his supervisors. He testified that if things don't go his way, he loses his temper. However, he tries to keep it to

9

himself and just work. (Tr. 637).

Claimant stated he tried working full time at Burger King but ended up getting into trouble. He also testified the work wore him out. Claimant stated he often talks without thinking. (Tr. 638). During the holidays, Claimant was working 5 1/2 hours per day. (Tr. 641). Claimant stated he did not have problems sitting and could lift about 30 pounds. (Tr. 643).

Claimant's father testified Claimant got into trouble for talking without thinking. He believed the Burger King manager "cut him a lot of slack" because he was an old school chum. (Tr. 647).

Claimant earned $12,000 in 1997 and $13,000 in 1998 working at Wal-Mart. (Tr. 650). He earned $6,700 in 2002, $2,900 in 2003, and $2,300 in 2004. (Tr. 651).

The vocational expert, Dr. Robert Sanders, testified Claimant could perform his past relevant work of dishwasher, sacker, and cart pusher. (Tr. 662).

In his decision, the ALJ found, after consideration of the factors set forth in Soc. Sec. R. 96-7p, Claimant's "allegation of significant limitations in the ability to perform basic work activities is not credible to the extent alleged." (Tr. 22). The ALJ found Claimant's allegedly disabling impairments were at approximately the same level of severity as prior to the onset date. He noted Claimant's condition had not worsened. The ALJ found Claimant's work history indicated his ability to maintain employment

in spite of his visual and hearing limitations.  Although testimony from Claimant's father indicated Claimant could not conform to social norms of the work place, the ALJ found Claimant's extensive work performance contraindicated such a finding.  Id.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence.  Id. The ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

This Court concurs with the ALJ's evaluation of the credibility of Claimant's statements concerning the level of his disability in light of the objective medical and employment evidence in the record.  While Claimant's conditions are clearly debilitating, they are not disabling to the extent of preventing him from performing his past relevant work.  The ALJ has sufficiently linked references to the evidentiary record with his findings of credibility to satisfy his obligation under this analysis.  Thus, this Court finds no error in his evaluation of credibility.

**RFC Determination**

Claimant also challenges the ALJ's RFC determination, contending that he failed to discuss "a good deal of significantly probative evidence." This evidence consists of (1) significant respiratory problems requiring constant proximity to an inhaler; (2) hospital visits for chest pain with abnormal EKG testing; (3) hypertension; (4) recurrent kidney stones; (5) obesity; and (6) falling asleep in a chair and while using the toilet.

The ALJ found Claimant's respiratory problems and hypertension were treated by medication. (Tr. 21). He also found Claimant's EKG did not reveal any acute changes, a finding not inconsistent with the medical records. Id. "[I]t is the claimant's burden to demonstrate an impairment, or a combination of impairments, that significantly limit her ability to do basic work activities." Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); 20 C.F.R. § 404.1521. Claimant has wholly failed to demonstrate kidney stones, obesity, and falling asleep on two occasions constitute an impairment. As such is the case, this Court finds no deficiency in the ALJ's evaluation of Claimant's RFC.

**Evaluation of Claimant's Mental Impairments**

Claimant contends the ALJ failed to conduct a Psychiatric Review Technique analysis in evaluating Claimant's mental impairments. In employing the technique, the ALJ is required to

"incorporate the pertinent findings and conclusions based on the technique." 20 C.F.R. § 416.920a(e)(2). The ALJ in this case did so in finding Claimant's borderline intellectual functioning was a severe impairment. The ALJ is also required to rate the degree of functional limitation in four areas – activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). While a PRT was completed by Dr. Varghese, the ALJ does not specifically refer to this report. Moreover, Dr. Varghese's report is a check off form which contains little other information from which the bases for her assessment can be ascertained. Without a written report or at least more explanation, a PRT completed by a non-examining agency physician is of dubious value. Hamlin v. Barnhart, 365 F.3d 1208, 1223 (10th Cir. 2004). On remand, the ALJ shall rate the level of functionality of Claimant based upon his admitted severe mental impairment in accordance with the regulations and prevailing case authority.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

DATED this 27th day of February, 2008.

						_____
						KIMBERLY E. WEST
						UNITED STATES MAGISTRATE JUDGE